**AFFIRMED; Opinion Filed December 7, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-00809-CV**

## IN THE INTEREST OF S.D., J.D., AND G.D., CHILDREN

**On Appeal from the 304th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-16-01098-W**

# MEMORANDUM OPINION

Before Justices Lang, Myers, and Stoddart
Opinion by Justice Myers

Father appeals the trial court's judgment terminating the parent-child relationships between him and his three children. Mother appeals the trial court's order denying her motion for further orders. We affirm the trial court's orders.

## BACKGROUND

In November 2016, the Department of Family and Protective Services removed the children from their parents' care. Father had driven recklessly and attempted to evade arrest while driving a car with his three-year old child in the car and without the child being in a car seat. The police also found methamphetamine in the car. Both Mother and Father had used drugs while caring for the children. The trial court ordered Mother and Father to complete services. Father successfully completed the services required by this initial order, but Mother did not. In 2017, the parties reached a mediated settlement agreement (MSA 1), agreeing that Father would have a monitored return of the children. One of the conditions of the agreement was that Father would

not allow Mother to reside with him and the children. The children were returned to Father's custody pursuant to MSA 1. The Department again removed the children when Father allowed Mother to move in with him and the children and Mother was using methamphetamine. The trial court ordered Mother and Father to complete additional services, but neither parent successfully completed them.

In March 2018, the parties signed a second mediated settlement agreement (MSA 2). In this agreement, Mother and Father agreed to termination of the parent-child relationships based on section 161.001(b)(1)(O) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O) (failure to complete court-ordered services). The Department agreed to a home study of Alexandria Rogers, who lived in Oregon, as a possible person to take custody of the children. The Department made an Interstate Compact Placement Request with the State of Oregon to conduct the home study. If the home study was not approved or if Rogers withdrew her request for the home study, then the Department promised to use its best efforts to place J.D. and G.D. in the same home for adoption. The Department also promised to use best efforts to find an adoptive placement that would allow Mother and Father post-termination access to the children once each year and allow them to send the children cards, letters, and pictures four times each year. Mother and Father and the other parties to the agreement "stipulate[d] that termination is in the best interest of the children."

The trial of the case, which included the prove-up of MSA 2, was held before the court on April 23, 2018. At the trial, the caseworker testified Father violated the trial court's orders by allowing Mother to move in with him and the children. The caseworker also testified Father failed to complete any of the services ordered after the children were removed the second time. She also testified about the Department's plans for placement and the eventual adoption of the children, and she testified that MSA 2 was in the children's best interest. The CASA supervisor testified and

the guardian ad litem attorney for the children stated that MSA 2 was in the best interest of the children. Neither of the parents testified at the trial. The trial court signed the "Agreed Order of Termination," which was the judgment terminating the parent-child relationships between appellants and the children and appointing the Department to be the children's permanent managing conservator.

## FATHER'S APPEAL

Father brings three issues on appeal contending (1) the evidence is legally and factually insufficient to support the trial court's finding of termination under section 161.001(b)(1)(O); (2) the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of the children; and (3) MSA 2 was void because it forbade a clear-and-convincing best-interest determination at the final hearing.

### Jurisdiction

The State asserts this Court lacks jurisdiction over this appeal because Father did not timely file his notice of appeal and the notice of appeal is defective. The trial court signed the termination order on April 23, 2018. Father's notice of appeal was due twenty days later. *See* FAM. § 109.002(a-1) (termination cases "shall follow the procedures for an accelerated appeal under the Texas Rules of Appellate Procedure"); TEX. R. APP. P. 26.1(b) ("in an accelerated appeal, the notice of appeal must be filed within 20 days after the judgment or order is signed"); *see also* TEX. R. APP. P. 26.3 (time to file notice of appeal may be extended up to fifteen days). Father filed his notice of appeal on July 13, 2018, which was eighty-one days after April 23, 2018.

Father argues his appeal is a restricted appeal under rule 30. *See* TEX. R. APP. P. 30; *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.012, .013. This Court has previously permitted restricted appeals from judgments terminating parental rights. *See In re J.A.M.R.*, 303 S.W.3d 422, 424 (Tex. App.—Dallas 2010, no pet.). A restricted appeal affords a party who did not

participate at trial the opportunity to correct an erroneous judgment. To prevail in a restricted appeal, the appellant must establish that he filed a notice of appeal within six months of the date the judgment was signed, he was a party to the underlying lawsuit, he did not participate in the hearing that resulted in the judgment or timely file any postjudgment motions or requests for findings of fact and conclusions of law, and error is apparent on the face of the record. TEX. R. APP. P. 30; *Fid. & Guar. Ins. Co. v. Drewery Constr. Co. Inc.*, 186 S.W.3d 571, 573 (Tex. 2006) (per curiam).

In this case, Father filed his notice of appeal eighty-one days after the judgment, which complies with the requirement that the notice of appeal be filed within 180 days. The State asserts the notice of appeal is defective because it did not contain the language required by Rule of Appellate Procedure 25.1. *See* TEX. R. APP. P. 25.1(d)(7). However, Father has amended his notice of appeal, and it now complies with rule 25.1.

Father did not appear in person or through counsel at the trial, and he did not file any post-judgment motions or request findings of fact and conclusions of law. The State argues Father participated in the hearing that resulted in the judgment by signing the mediated settlement agreement. "[T]he question is whether the appellant has participated in 'the decision-making event' that results in judgment adjudicating the appellant's rights." *Texaco, Inc. v. Cent. Power & Light Co.*, 925 S.W.2d 586, 589 (Tex. 1996). "[A] party who has taken part in all steps of a summary judgment proceeding except the hearing on the motion has participated in the 'actual trial' that determined the parties['] rights." *Id.* (citing *Stubbs v. Stubbs*, 685 S.W.2d 643, 645 (Tex. 1985)).

The State cites *In re B.H.B.*, 336 S.W.3d 303 (Tex. App.—San Antonio 2010, pet. denied), in support of its argument that Father's signing MSA 2 constituted participation at the hearing resulting in termination of his parental rights. In that case involving termination of the mother's

parental rights, the mother signed an affidavit of voluntary relinquishment of her parental rights regarding her children. *Id.* at 304. She did not appear at the final hearing where the trial court terminated her rights pursuant to the affidavit. *Id.* at 304–05. She later filed a notice of restricted appeal. *Id.* The court of appeals concluded her signing the affidavit constituted participation in the hearing where her rights were terminated. *Id.* at 306. The mother's affidavit included these statements: "I do not want to go to court in person . . . . I want this Affidavit of Voluntary Relinquishment of Parental Rights presented to the Court. . . . I specifically agree that a final hearing in the lawsuit may be held at any time without further notice to me." *Id.* This language shows the mother intended the affidavit to be presented to the court and used in lieu of her presence and testimony in the court. Thus, the affidavit provided the mother participated in the hearing through her affidavit.

In this case, MSA 2 contains no such language. Instead, it states, "The parties agree to appear in court at the first available date to present evidence and secure renditions of judgment in accordance with this Mediated Settlement Agreement." Thus, unlike the situation in *B.H.B.*, the parties contemplated Father's participation in the final hearing. Thus, *B.H.B.* is not applicable to this case. That the parties contemplated presenting evidence at a subsequent hearing also distinguishes MSA 2 from a summary judgment proceeding. *Cf. Texaco, Inc.*, 925 S.W.2d at 589 (party who took part in all steps of summary judgment proceeding except summary judgment hearing participated in "actual trial" that determined parties' rights because party may not present new evidence at summary judgment hearing). We conclude Father's signing the mediated settlement agreement did not constitute participation "in the hearing that resulted in the judgment complained of." TEX. R. APP. P. 30.

The remaining question is whether there is error on the face of the record. For purposes of our review, the face of the record includes all the papers on file in the appeal including the

reporter's record. *See Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam). As such, our scope of review may include challenges to the legal and factual sufficiency of the evidence. *Id.*

## Sufficiency of the Evidence

Father's first and second issues contend the evidence is legally and factually insufficient to support the trial court's finding that Father violated paragraph (O) and that termination was in the children's best interest.

### *Standard of Review*

In reviewing the legal sufficiency of the evidence in a parental termination case,

> a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). When reviewing the factual sufficiency of the evidence, we "give due consideration to evidence the factfinder could reasonably have found to be clear and convincing." *Id.* "[T]he inquiry must be 'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'" *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d at 267).

–6–

*Statutory Violation*

Under section 161.001(b)(1)(O), the State had to prove by clear and convincing evidence that Father

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child . . . .

FAM. § 161.001(b)(1)(O). Father agreed in MSA 2 to termination under this provision. During the trial, the caseworker testified Father failed to complete the services. The evidence admitted at trial does not show which services Father failed to complete. Father cites to a Family Service Plan Evaluation in the clerk's record, which stated, "As Of: 3/27/2018 . . . [Father] completed court ordered services." However, this document was not admitted into evidence at the trial, the trial court did not take judicial notice of the file, and nothing shows the court considered this document during the trial.

Father also argues the evidence is insufficient because the children had not "been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months." *Id.* The caseworker testified the children had "been in the temporary managing conservatorship of the Department not less than nine months." Father asserts that temporary orders signed on December 14, 2017 show the children were in the Department's custody for four months before the trial, not nine months. However, that document was not in evidence, and we may not consider it.

We conclude the evidence is legally and factually sufficient to support the trial court's termination of the parent-child relationships between Father and the children under section 161.001(b)(1)(O). We overrule Father's first issue.

–7–

*Best Interest of the Children*

In his second issue, Father contends the evidence was legally and factually insufficient to support the trial court's finding that termination of the parent-child relationships was in the best interest of the children. The supreme court has set forth a non-exclusive list of factors to be considered in determining whether termination is in a child's best interest:

(1) the child's desires;

(2) the child's emotional and physical needs now and in the future;

(3) any emotional and physical danger to the child now and in the future;

(4) the parental abilities of the individuals seeking custody;

(5) the programs available to assist the individuals seeking custody to promote the best interest of the child;

(6) the plans for the child by the individuals or agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and

(9) any excuse for the parent's acts or omissions.

*In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (quoting *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). The State need not prove all of the factors as a condition precedent to termination. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

In *In re A.C.*, No. 17-0477, 2018 WL 5304691 (Tex. Oct. 26, 2018), the Texas Supreme Court concluded that a mediated settlement agreement in which the parent agreed to termination of the parent-child relationship and stipulated that termination was in the best interest of her children, constituted legally and factually sufficient evidence that termination was in the children's best interest. *Id.* at *8. In that case, the children's mother agreed in a mediated settlement agreement to termination of her parental rights under section 161.001(b)(1)(N) and (O). The supreme court stated that termination under these provisions has a "bearing on several of the

–8–

factors that guide the best-interest determination, creating a reasonable inference that Mother," for purposes of paragraph (O), "was . . . unable to seek out, accept, and complete available services or to effect positive environmental and personal changes within a reasonable period of time." *Id.* at *7. As in this case with Father, the record in that case "bears no evidence of any excuse for Mother's acts or omissions, and the MSA includes primary and alternative plans for placement, to which Mother unconditionally assented." *Id.* The supreme court concluded that "Mother's stipulations in the MSA are sufficient to produce a firm belief or conviction that termination of the parent-child relationship is in the children's best interests." *Id.* The supreme court's reasoning is equally applicable in this case.

Moreover, as this Court observed in *In re J.R.W.*, No. 05-15-00493-CV, 2015 WL 5050169 (Tex. App.—Dallas Aug. 27, 2015, pet. denied), "[t]he court could infer that Father's parenting abilities were lacking from his agreeing that termination was in the children's best interest. Father's agreement and his testimony that termination under the terms of the mediated settlement agreement was in the children's best interest was an act clearly indicating that the existing parent-child relationship was improper." *Id.* at *3.

Besides the statements in MSA 2, the evidence in the record shows Father endangered the children by allowing Mother to move in with him and the children and live with them while she was using methamphetamine. The testimony at trial also showed that "all kids are doing well" in their foster-care placements and that the Department's plans for the children was their eventual adoption. We conclude that Father's stipulations in the mediated settlement agreement and the testimony at trial "are sufficient to produce a firm belief or conviction that termination of the parent-child relationship is in the children's best interests." *In re A.C.*, 2018 WL 5304691, at *7. We overrule Father's second issue.

*Voidness of the Mediated Settlement Agreement*

In his third issue, Father contends MSA 2 "is void for not requiring a clear and convincing best interest determination." Father argues "the MSA used in this case void is [sic] because it forbids a clear and convincing best interest determination at final hearing." Father did not make this argument at trial; therefore, it is not preserved for appellate review. *See* TEX. R. APP. P. 33.1; *see also In re A.C.*, 2018 WL 5304691, at *8 ("We need not, and thus do not, decide what defenses to the MSA's enforcement are available to Mother, if any, because none have ever been asserted."). Furthermore, at the conclusion of the trial, the trial court found "that termination of the parent-child relationship between mother and child and father and the child is in the best interest of this child." Thus, the record indicates the trial court made a clear-and-convincing best-interest determination at the trial. We overrule Father's third issue.

## Conclusion

We affirm the trial court's judgment terminating the parent-child relationships between Father and the children.

## MOTHER'S APPEAL

On July 3, 2018, seventy-one days after the termination of the parent-child relationships between Mother and the children, Mother filed a "motion for further orders." In the motion, Mother alleged the home study of Alexandria Rogers as a potential placement for the children was never conducted. Mother prayed that the court "find that an independent home study by an approved agency of Oregon be conducted an[d] submitted for an ICPC [Interstate Compact on the Placement of Children] placement, is in the best interest of the children. [Sic]" The trial court denied Mother's motion, stating Mother did not have standing. Mother brings five issues contending the trial court erred by denying her motion.

–10–

## Standing

In her third issue, Mother contends the trial court erred by determining she lacked standing to bring the motion.

Mother did not timely file a motion for new trial or notice of appeal from the termination of her parental rights. Nor has she filed a notice of restricted appeal. Therefore, the order terminating Mother's parental rights became final and unappealable on May 23, 2018. *See* TEX. R. CIV. P. 329b(d), (f).

"[A]n order terminating the parent-child relationship divests the parent and the child of all legal rights and duties with respect to each other, except that the child retains the right to inherit from and through the parent unless the court otherwise provides." FAM. § 161.206(b). The terminated parent has no standing regarding the conservatorship of the child. *See In re A.N.A.*, No. 05-18-00169-CV, 2018 WL 2228624, at *1–2 (Tex. App.—Dallas May 16, 2018, no pet.) (mem. op.); *In re A.G.*, No. 05-16-01207-CV, 2017 WL 655954, at *1 (Tex. App.—Dallas Feb. 17, 2017, pet. denied) (mem. op.). The terminated parent has limited standing to seek enforcement of the terms of the termination order that allow the terminated parent limited post-termination contact with the child. FAM. § 161.2061. But the terminated parent otherwise has no standing to bring an original suit or to seek further orders regarding the conservatorship of the child. *See id.* § 102.006.

Mother's motion seeks enforcement of the judgment's provisions that a home study of Alexandria Rogers be conducted pursuant to the Interstate Compact on the Placement of Children. *See* FAM. §§ 162.101–.107. This motion concerns the future conservatorship of the children. After the termination, Mother had no standing to pursue claims concerning the children's conservatorship.

Mother argues she had standing under section 102.003(a)(1) of the Family Code as a parent in the suit affecting the parent-child relationship brought by the Department, and that she retained her standing as long as the controversy existed between the parties. However, the controversy ceased to exist when the trial court's judgment became final when Mother did not appeal. Her motion for further orders was filed after the trial court's judgment terminating her parental rights became final.[1]

Mother also asserts she has standing under contract law to seek enforcement of the agreement. MSA 2 states it "is entered into pursuant to section 153.0071 of the Texas Family Code." (Emphasis omitted.) Therefore, Mother has only the rights provided by a signor under that section. A party to a mediated settlement agreement has standing to seek enforcement of the agreement to the extent of requiring the trial court to enter judgment on the agreement. *Id.* § 153.0071(e). However, Mother's motion for further orders does not complain that the trial court's judgment does not comply with MSA 2. And, even if it did, the trial court's plenary power to alter the judgment substantively expired thirty days after the court signed the judgment. Section 153.0071 does not give Mother standing to seek enforcement of the terms of the termination order concerning the children's conservatorship.

We conclude the trial court did not err by denying her motion due to her lack of standing. We overrule Mother's third issue.

### Due Process

In her first issue, Mother contends her due process rights were infringed by the procedural rules and statutes applied in this case. To be entitled to appellate review of a claim of denial of due process, a party must raise that claim in the trial court. TEX. R. APP. P. 33.1; *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003). Neither Mother's motion for further orders nor her other

---

[1] We do not address whether Mother would have had standing had she filed the motion for further orders before the judgment became final.

–12–

documents filed in the trial court asserted any denial of due process. Accordingly, no claim of denial of due process is preserved for evidentiary review.

Mother also asserts she was deprived of her right to appeal. Mother argues we must analyze the governmental and private interests at stake in this case. However, because her parental rights were terminated and that order is final, Mother has no private interests in the future conservatorship of the children. Moreover, Mother's argument does not specify what issues she was prevented from appealing. The trial court denied Mother's motion on the ground that she lacked standing, and we have addressed the parties' arguments concerning that ground. To the extent Mother may assert she has a right to appeal the underlying order of termination, section 109.002(a-1) provided her the right to appeal that order by filing a notice of appeal within twenty days of the judgment; however, she waived that right by failing to file a timely notice of appeal. *See* FAM. § 109.002(a-1); TEX. R. APP. P. 26.1, 26.3. Nor has Mother filed a notice of restricted appeal. We conclude Mother has not shown she was denied the right to appeal.

### Right to Counsel

Mother's first and second issues contend she was denied the right to counsel after entry of the judgment. Mother had appointed counsel at trial, and the judgment terminating her parental rights released the attorney from representing her further in this case. Mother argues that because she did not have counsel after the judgment, it was impossible for her "to monitor the State's compliance with the Agreed Order [terminating her parental rights], to notice when the Order had been deviated from and not fully complied with, to investigate the implications of that failure, to discover a key misrepresentation or mutual mistake, and initially to appeal the court's determination on standing and ultimately the Agreed Order itself." As discussed above, Mother has appealed the trial court's ruling on her standing, and she was represented by counsel in this appeal. Mother had no standing to pursue enforcement of the conservatorship provisions of the

judgment, including the home study of Alexandria Rogers, so she had no right to counsel for that purpose. Mother's motion for further orders in the trial court did not allege misrepresentation or mutual mistake, so these arguments are not preserved for appellate review. *See* Tex. R. App. P 33.1.

Mother also argues that because she had no representation after the judgment, she lacked counsel to determine whether to appeal from the judgment. Mother did not raise this argument in the trial court, she did not object to the trial court's release of her attorney, and she did not request appointment of counsel for further proceedings in the trial court after the judgment, so this argument is not preserved for appellate review. Tex. R. App. P. 33.1. Mother also cites no authority for the proposition that she was entitled to representation after her parental rights were terminated pursuant to a mediated settlement agreement she signed. *See* Tex. R. App. P. 38.1(i) (appellant's brief must contain appropriate citations to authority).

Mother also contends her interests were that she had "a fundamental, compelling and controlling right to have and direct [her] children, and if the tragic decision to place the children elsewhere must be made, that such a decision is correct and does not fall prey to error." We disagree. After the termination of Mother's parental rights, she had no legal interest in the children's placement. *See In re A.N.A.*, 2018 WL 2228624, at *1–2; *In re A.G.*, 2017 WL 655954, at *1.

We conclude Mother has not shown she was denied the right to counsel. We overrule Mother's first and second issues.

## Misrepresentation and Mutual Mistake

In her fourth issue, Mother asserts, "Did fraudulent misrepresentations or mutual mistakes made during the settlement of this case, which Appellant Mother relied upon, work such violence to the underlying understandings between the parties so as to make the order and agreement

–14–

voidable?" Mother appears to assert there was fraud in MSA 2 because the home study of Alexandria Rogers was never performed. Under section 153.0071, a mediated settlement agreement sets forth the terms to be included in the final judgment. Therefore, Mother's complaint appears to be that the judgment terminating her parental rights was the result of misrepresentation or mutual mistake concerning the conducting of the home study. The judgment is final, and the time for appeal of that judgment is passed. Therefore, it can be set aside only by a bill of review. TEX. R. CIV. P. 329b(f). Mother's motion for further orders is not a bill of review. *See Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (per curiam) (elements of bill of review). Nor does the record show that Mother has filed any document that could be construed as a bill of review. We conclude Mother has not shown that any misrepresentation or mutual mistake entitles her to reversal of the order denying her motion for further orders.

We overrule Mother's fourth issue.

## Trial Court's Failure to Enforce Its Order

In her fifth issue, Mother contends "the trial court's failure to enforce its own order, either *sua sponte* or as a result of the motion of Appellant Mother, constitute[d] error meriting remand."

Mother states this Court set out the requirements of a motion for enforcement of a court order in *Stauffer v. Nicholson*, 438 S.W.3d 205 (Tex. App.—Dallas 2014, no pet.). We stated, "Enforcement of a court order involves a motion or pleading in which a party seeks as relief from the court the exercise of the court's power to compel compliance with the order or punish noncompliance typically using the threat of the court's power to impose sanctions or hold a party in contempt." *Id.* at 211. However, a party must have standing to pursue the relief sought for the trial court to have subject matter jurisdiction. *See Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018) ("The doctrine of standing . . . goes to whether or not a court has subject matter jurisdiction to decide a case"; standing "is a component of subject matter jurisdiction"). As

discussed above, Mother did not have standing to seek the relief sought in her motion for further orders. Therefore, the court lacked jurisdiction to grant the relief Mother requested.

We overrule Mother's fifth issue.

## Conclusion

We affirm the trial court's order denying Mother's motion for further orders.

/Lana Myers/
LANA MYERS
JUSTICE

180809F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF S.D., J.D., AND
G.D., CHILDREN

No. 05-18-00809-CV

On Appeal from the 304th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. JC-16-01098-W.
Opinion delivered by Justice Myers.
Justices Lang and Stoddart participating.

In accordance with this Court's opinion of this date, the trial court's Agreed Order of Termination is **AFFIRMED**, and the trial court's order denying Respondent Mother's Motion for Further Orders is **AFFIRMED**.

Judgment entered this 7th day of December, 2018.